IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NADINE L. YOUNG, | |
| Plaintiff, | |
| v. | Civil Case No. SAG-21-00996 |
| HOUSING AUTHORITY OF BALTIMORE CITY, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Nadine L. Young brought this employment discrimination action against the Housing Authority of Baltimore City ("HABC") and her co-worker at the agency, George Reaves ("Reaves"). HABC and Reaves have filed motions to dismiss the various claims against them. ECF 18 (HABC's Motion); ECF 17 (Reaves's Motion). I have considered the Motions, the memoranda filed in support, and the oppositions and replies thereto. ECF 23, 24, 25. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth herein, HABC's Motion will be granted in part and denied in part, and Reaves's Motion will be granted.

I.     BACKGROUND

The following facts are derived from the Complaint, ECF 1, and are taken as true for the purposes of adjudicating these Motions. Young began working as a Maintenance Technician for HABC in 2003. ECF 1 ¶ 11. In 2011, Young and Reaves, who also served as a Maintenance Technician, worked at the same assigned HABC location. *Id.* ¶ 15. Reaves made a sexually inappropriate comment to Young, which led to a confrontation. *Id.* Young reported the incident up the supervisory chain, and human resources eventually recommended disciplinary action against Reaves, which resulted in Young and Reaves working at different job sites. *Id.*

1

On or about August 17, 2018, HABC transferred Plaintiff to Latrobe Homes to assist with turning over vacant housing units. *Id.* ¶ 12. Upon her arrival, she noticed that Reaves was also working at that location. *Id.* ¶ 13. Young asked her then-supervisor, Mr. Maple, why the human resources department would assign her to work alongside Reaves. *Id.* Maple assured Young that she and Reaves would be assigned to separate work teams. *Id.* However, Maple resigned on June 2, 2019, and was replaced by a new supervisor, Mr. Brooks. *Id.* ¶ 17. Brooks assigned Young and Reaves to work in a single team of three Maintenance Technicians. *Id.* ¶ 18.

Initially, the team functioned adequately. Young typically worked alone while Reaves worked with the third employee. *Id.* ¶ 19. Young engaged in minimal conversation with Reaves. *Id.* ¶ 20. However, Reaves "would sometimes watch [Young] work." *Id.* On or about September 19, 2019, Reaves "made unwanted sexual advances" on Young, "physically touching" her and "trying to get in between [Young's] legs" as she was sitting on a stair step. *Id.* ¶ 21. Young physically pushed Reaves off of her and left the unit. *Id.* ¶¶ 21-22. The next day, Young reported the incident to a supervisor, Harold Harvey. *Id.* ¶ 24. Harvey later informed Young that he had spoken with Reaves but that Young and Reaves would still work on the same team. *Id.*

However, a few days later, Harvey called Young and Reaves to his office and announced that they would no longer be part of the same team. *Id.* ¶ 25. Reaves got upset and yelled at Young that she "shouldn't open her f***** mouth." *Id.* Although they were then assigned to different teams within Latrobe Homes, Reaves "continued to act inappropriately towards [Young] and sexually harass" her. *Id.* ¶ 26.

In mid-October, 2019, Young again informed a supervisor of Reaves's ongoing harassment. *Id.* ¶ 27. In October of 2019, an HR employee, Lakeesha Brown, sought to talk to Young about Reaves's conduct. *Id.* ¶ 28. Young met with Brown in the presence of a union

representative. *Id.* ¶ 30. Following the meeting, HABC opened an investigation into Reaves's sexual harassment of Young. *Id.* In November, 2019, HABC transferred Reaves from Latrobe Homes, which was Young's worksite, to Douglas Homes.[1] *Id.* ¶ 33.

Around this same time, HABC circulated a memo offering overtime opportunities at Douglas Homes to its Maintenance Technicians. *Id.* ¶ 34. Young asked to be assigned overtime, and she was told she would be placed on an overtime list. *Id.* Young was assigned to work overtime at Douglas Homes on November 25, 2019, but after about 20 minutes her supervisor called and asked her to return to Latrobe Homes. *Id.* ¶ 35. Upon her return, her supervisor stated that Brown had told him Young could not work at Douglas Homes because Reaves was assigned there. *Id.* ¶ 36. Reaves had not been present at Douglas Homes during Young's brief overtime shift. *Id.* ¶ 37.

On or about December 9, 2019, HABC notified Plaintiff that it had completed its investigation of Reaves's conduct and would take disciplinary action, including prohibiting Young and Reaves from working together. *Id.* ¶ 38. Two days later, Brown informed Young that she could not work any of the overtime opportunities at Douglas Homes because it was Reaves's assigned location. *Id.* ¶ 39.

On or about December 16, 2019, Plaintiff filed a complaint with the EEOC, alleging sexual harassment and retaliation. *Id.* ¶ 40. About a month later, on January 20, 2020, HABC held an appreciation party for its employees. *Id.* ¶ 41. Reaves sat at Young's table at the party, stared at her, and at one point stood right next to her. *Id.* ¶¶ 41, 42. Human resources did not intervene. *Id.* ¶¶ 40-42.

---

[1] This Court will adopt the Complaint's reference to "Douglas Homes," although this Court knows that HABC maintains a location on E. Lexington Street known as "Douglass Homes."

Young alleges that she suffered "considerable emotional pain and suffering due to the sexual harassment and retaliation that she endured," to include "humiliation, shame, embarrassment, stress, and anxiety" along with an inability to sleep. *Id.* ¶ 46. She further alleges that she suffered economic losses as a result of her inability to work overtime and as a result of medical costs for psychiatric treatment she has sought. *Id.* ¶ 47.

## II.   LEGAL STANDARDS

A 12(b)(6) motion constitutes an assertion that, even if the facts alleged by a plaintiff are true, the complaint or counterclaim fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (explaining that a court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff"). To survive a motion to dismiss, the factual allegations of a complaint or counterclaim, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation is to show the "'grounds' of his 'entitle[ment] to relief,'" offering "more than labels and conclusions." *Id.* (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). It is not sufficient that the well-pleaded facts suggest "the mere possibility" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" meaning that the court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

HABC styled its motion as a motion "in the alternative" seeking summary judgment. ECF 18. Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011) (citations omitted*).* However, "the party opposing summary judgment

'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. Here, Young has done just that, attaching an affidavit from her counsel describing the discovery she seeks to justify her opposition to the summary judgment motion. ECF 24-2. Accordingly, this Court declines to consider HABC's motion as one seeking summary judgment and will evaluate it only under the motion to dismiss standard described above.

### III. DISCUSSION

#### A. Title VII Claims (Counts I and II)

##### i. Gender Discrimination

Plaintiff alleges that her Title VII rights were infringed because she suffered discrimination on the basis of her gender (Count I). *See* ECF 1 at 1. Gender discrimination is covered by Title VII, which renders it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . .gender." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove discrimination "either through direct evidence of discriminatory intent, or by using the four-part *McDonnell Douglas* scheme which provides an inference of discriminatory intent." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998). This test requires a plaintiff to allege (1) that she is a member of a protected class; (2) that she was qualified for her job and maintained satisfactory job performance; (3) that, in spite

of her qualifications and job performance, she suffered an adverse employment action; and (4) that the position or opportunity remained open or was filled by similarly qualified applicants outside of her protected class. *Id.* at 1288; *see also*, *Harris v. Home Sales Co.*, 499 F. App'x 285, 292 (4th Cir. 2012) (unpublished).

Here, however, Young has not alleged any gender-based discrimination with respect to her compensation, terms, conditions, or privileges of employment. She has, of course, alleged that she was subjected to a hostile environment and was prohibited from working overtime as a result of her complaint of sexual harassment against Reaves. Those claims will be addressed below. But she has not, for example, alleged that male employees were permitted to work overtime when she was not. In fact, she has not identified by gender any of the individuals who availed themselves of the available overtime. By her own allegations, the denial of overtime opportunities was premised on her complaint against Reaves, not on her gender. Moreover, she specifically alleged that Reaves does not work overtime, so even he cannot serve as the comparator for purposes of gender discrimination. Accordingly, the class-based gender discrimination claim contained in Count I will be dismissed.

### ii. Hostile Work Environment

Young also alleges in Count I that HABC subjected her to a hostile work environment. To establish a Title VII claim for a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . [gender]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). "If the harasser is a supervisor, then the employer may be either strictly or vicariously

liable," depending on whether the harassment "culminates in a 'tangible employment action.'" *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 333, 333 n.6 (4th Cir. 2018) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 429-31 (2013)). In contrast, harassment by a coworker or a third-party, resulting in a hostile work environment, can be imputed to an employer only "if the employer knew or should have known of the harassment and failed 'to take prompt remedial action reasonably calculated to end the harassment.'" *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014) (quoting *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir.1995)). A plaintiff is required to allege facts that, taken if true, establish that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Evans v. International Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (quoting *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)).

The allegations in Young's complaint, taken as true and in the light most favorable to her, are sufficient to meet the "high bar in order to satisfy the severe or pervasive test." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. Young has alleged, albeit in somewhat nondescriptive fashion, a serious incident of unwelcome physical sexual contact from an individual she had previously accused of sexual harassment, but then was assigned to work with closely. That single incident alone, taken in the light most favorable to the plaintiff at the pleading stage, is sufficient to state a plausible claim of severe and pervasive conduct creating an abusive work environment. This Court acknowledges, though, that the remaining allegations in Young's complaint, however, are either about relatively minor incidents such as "staring" or "standing close" or lack sufficient specificity as to what happened or how frequently the incidents occurred. For example, Young alleges that on the same day as the physical assault, Reaves approached her car window and "continued to harass" her, providing no specifics about Reaves's actions. ECF 1 ¶ 22. Similarly, in the month

following the physical incident, Young alleges conclusorily that Reaves "continued to act inappropriately towards Plaintiff and sexually harass Plaintiff when he was around Plaintiff at Latrobe Homes." *Id.* ¶ 26. Such generalized allegations lack the specificity to permit this Court to determine whether Reaves's other conduct was of the degree to be "severe and pervasive," even assuming it were sexual in nature. *See Skipper v. Giant Food Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003) ("[A] plaintiff pressing a hostile work environment claim must substantiate his claim with reasonable specifics about the alleged incidents that underlie the claim.").

Young has also alleged facts plausibly suggesting that Reaves's harassing conduct could be imputable to HABC. She relies on evidence of her sexual harassment complaint about Reaves eight years prior to suggest that HABC knew or should have known that harassment would occur if they were assigned to same workplace, and particularly to the same small team. Moreover, she alleges that her supervisor's response to the report of the physical assault by Reaves, mere reassignment to different teams within Latrobe Homes, did not protect her from ongoing harassment from him at the work site. ECF 1 ¶ 25. Thus, under the forgiving pleading standard, Young's allegations sufficiently allege a hostile work environment plausibly imputable to HABC.

HABC's attempt to assert the *Faragher/Ellerth* affirmative defense is not appropriate at the pleading stage. Under that doctrine, an employer can avert liability if it can establish (1) the exercise of reasonable care to prevent and correct promptly any sexual harassment; and (2) the plaintiff's unreasonable failure to avail herself of preventative or corrective opportunities offered by the employer. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However, courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d

943, 952 (4th Cir. 1992)). "[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*). This case does not present such circumstances, as questions about the care taken by HABC and the reasonableness of Young's reporting require factual development not evident from the Complaint's face. HABC will of course be free to raise the defense as the litigation proceeds, but the hostile work environment claim in Count I survives the motion to dismiss.[2]

### iii. Title VII Retaliation

Count II alleges a claim for retaliation under Title VII. Retaliation requires evidence "(1) that [plaintiff] engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).

---

[2] The hostile work environment claim, however, will not be construed to include any allegations about the January 20, 2020 employee appreciation event, which was not referenced in Young's December, 2019 EEOC charge and cannot be classified as "like or related to the allegations contained in the charge, or which grow out of such allegations." *Nichols v. Comcast Cablevision of MD,* 84 F. Supp. 2d 642, 656 (D. Md. 2000) (quoting *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992). The allegations in the charge relate to harassment on the job at Latrobe Homes and the deprivation of overtime, and do not plausibly encompass the failure of unnamed human resources representatives to protect Young from interaction with Reaves at what was apparently a one-time agency-wide social function.

Young's allegations suffice to state a claim for Title VII retaliation under those standards. She alleges that she engaged in protected activity on September 20, 2019 when she reported the physical touching incident to her supervisor, on October 17, 2019, when she told her supervisor of the continued harassment, and on October 25, 2019 when she met with Brown, from Human Resources, to initiate the investigation into Reaves's conduct. She then alleges that HABC denied her the opportunity to pursue overtime when it became available at Douglas Homes, and that Brown expressly informed her that she was being denied the overtime opportunities because they existed at Reaves's assigned workplace. Thus, the denial of overtime was expressly linked to the filing of the complaints, and HABC's motion to dismiss will be denied as to Count II.

### B. Maryland Declaration of Rights Claims (Counts III and IV)

An alleged violation of Maryland's Declaration of Rights is construed as a state constitutional claim. *Okwa v. Harper*, 360 Md. 161, 757 A.2d 113, 139-40 (2000). Here, Young alleges equal protection (Count III) and retaliation (Count IV) claims under Articles 24 and 46 of the Maryland Declaration of Rights against HABC and Reaves. ECF 1 ¶¶ 65-82.

Article 24 is regarded in Maryland courts as embodying the principle of equal protection expressed in the Fourteenth Amendment to the federal constitution. *Okwa*, 757 A.2d at 140-41; *Hargrove v. Maryland Retirement System*, 310 Md. 406, 529 A.2d 1372, 1377 (1987). The available remedies, however, are somewhat broader under the state constitution. *DiPino v. Davis*, 354 Md. 18, 729 A.2d 354, 371 (1999). For example, Maryland law does not recognize the distinction of official versus personal capacity for state constitutional violations, and local governmental entities in Maryland "do . . . have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment." *Id.* at 372.

Young attempts to bring an Article 24 claim against Reaves in his personal capacity, as "a public official who violates the plaintiff's rights under the Maryland Constitution is personally liable for compensatory damages." *Ritchie v. Donnelly*, 324 Md. 344, 597 A.2d, 432, 445 (1998) (citing *Clea v. City of Baltimore*, 312 Md. 662, 541 A.2d 1303, 1312 (1988). The question, then, is whether Reaves is "a public official" by virtue of his status as a government employee. This Court concludes that he is not.

The case of *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 758 A.2d 95 (2000), is instructive. Plaintiff Jacqueline Manikhi alleged that she was sexually harassed repeatedly by her coworker, Francisco Ovid, as they both worked the night shift as bus cleaners for the Mass Transit Administration ("MTA"), a unit of Maryland's state Department of Transportation. The Court determined that Manihki's allegations stated a claim for hostile environment sex discrimination under Title VII against MTA. *Id.* at 349. While considering Manihki's equal protection claims under Article 24, the Court reasoned that "the equal protection component of Article 24, standing alone, embraces a prohibition against gender based [*sic*] discrimination in public employment." *Id.* at 363. The Court, however, summarily affirmed the lower court's dismissal of the Article 24 claim against Ovid, "who is not a public official." *Id.* at 364. While the Court did not expound upon its reasoning in that section of its opinion, in its earlier section considering Manihki's claims against Ovid under 42 U.S.C. § 1983, it clarified that, "Ovid was an A-Cleaner, as was Manikhi. He had no authority or control over her. His alleged actions were not under color of state law." *Id.* at 359.

The allegations Manikhi lodged against MTA were similar to those Young now asserts against HABC, in terms of the agency's failure to take measures to protect the plaintiffs from ongoing harassment even after they made initial formal claims of sexual harassment. Young's

11

suggestion, then, that Reaves should be deemed a "government official" simply because his harassment was "continuously authorized" by HABC as a result of its failure to act is unpersuasive, particularly because the Court of Appeals reached no such conclusion when extremely similar facts were presented in *Manikhi*. Because Reaves was not a public official acting under color of state law, the Article 24 claim against him must be dismissed.[3]

In contrast, though, because Young has stated plausible hostile work environment and retaliation claims against HABC, this Court declines to dismiss the corresponding Article 24 claims at this stage of the proceeding. To the extent Young intended to include a *respondeat superior* claim, however, it would be subject to dismissal because the applicability of that doctrine depends upon Reaves's actions having been undertaken within the scope of his employment. *Tall v. Board of School Comm'rs of Balt. City*, 706 A.2d 659, 665 (Md. Ct. Spec. App. 1998). Courts routinely find that an employee's sexual harassment of another employee is not within the scope of employment. *See, e.g.*, *Anderson v. Johns Hopkins Bayview Medical Center, Inc.*, Civ. No. JFM-16-1567, 2017 WL 220136, at *3-4 (D. Md. Jan. 18, 2017); *Samuels v. Two Farms, Inc.*, Civ. No. DKC-10-2480, 2012 WL 261196, at *10 (D. Md. Jan. 27, 2012) (collecting cases, noting application of *Tall* standard to sexual harassment, and finding no employer liability). Thus, Young has not adequately pled a *respondeat superior* claim under Article 24.

While certain of her Article 24 claims survive dismissal, the other provision of the Declaration of Rights that Young cites, Article 46, is inapplicable in this context. It states,

---

[3] Young's contention that Reaves "is a necessary party to this case under the LGTCA" puts the cart before the horse. ECF 23 at 11-13. Essentially, Young argues that because HABC is liable for payment of any judgment against its employee, there must be a viable claim against Reaves, the employee, in order for HABC to have to pay the judgment. The initial question, though, before determining who has to pay the judgment, is determining whether there is a viable claim that has been asserted against the employee. If not, then there is no judgment to be paid, pursuant to the LGTCA or otherwise.

"Equality of rights under the law shall not be abridged or denied because of sex." Article 46 is used in cases presenting gender-based distinctions applicable to entire classes of individuals. *See Conaway v. Deane*, 401 Md. 219, 932 A.2d 571, 591 (2007), *abrogated by Obergefell v. Hodges*, 576 U.S. 644 (2015) ("In virtually every case where this Court had the occasion to consider Article 46, the challenged classification drew clear lines between men and women as classes."). Although a viable claim of gender discrimination under Title VII can be sufficient to state a claim against a governmental employer for violation of Article 46, *Penhollow v. Bd. of Comm'rs for Cecil Cty.*, 695 A.2d 1268, 1287 (Md. Ct. Spec. App. 1997), cited in *Hudock v. Kent Cty. Bd. of Educ.*, Civ. No. CCB–14–2258, 2015 WL 1198712, at *10 n.5 (D. Md. Mar. 16, 2015), this Court has already concluded that Young failed to state a claim under Title VII for class-based gender discrimination. Moreover, Young has cited no authority in Maryland case law for the proposition that Article 46 is an appropriate basis for a claim against anyone other than a governmental employer, making her claim against Reaves unviable. Reaves, as a coworker with no policymaking authority, could not have affected Young's "equality of rights under the law." In fact, Young does not even address her Article 46 claims in her oppositions to the Motions, perhaps recognizing the flaws in this particular legal theory. *See* ECF 23, ECF 24.

### C.  Intentional Infliction of Emotional Distress Claim (Count V)

Young also asserts a claim for intentional infliction of emotional distress under Maryland law. ECF 1 ¶¶ 83-90. The elements of such a claim are: (1) that the conduct in question was intentional or reckless; (2) that the conduct was extreme and outrageous; (3) that there was a causal connection between the conduct and the emotional distress; and (4) that the emotional distress was severe. *See Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977).

Under Maryland law, "the tort of intentional infliction of emotional distress is rarely viable." *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997). A plaintiff must plead and prove each element with specificity. *See Foor v. Juvenile Serv. Admin.*, 78 Md. App. 151, 552 A.2d 947, 956 (1989) ("bald and conclusory allegations will not suffice"). "It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Id.* at 959 (citations omitted); *see also The Estate of Ellen Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F. Supp. 2d 702, 712 (D. Md. 2001) (alterations added) (some quotations omitted) ("A complaint that fails to allege sufficient facts in support of each element must be dismissed . . . [A] deficiency in any one [element] is fatal.").

Intentional infliction of emotional distress is not a tort to be widely invoked. In fact, Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and "its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Figueiredo–Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991) (citations omitted); *see also Solis v. Prince George's County*, 153 F. Supp. 2d 793, 804–08 (D. Md. 2001). Moreover, even demonstrating a defendant's intent to cause emotional distress is insufficient. "If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless *not* liable unless his or her conduct is also extreme and outrageous." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670-71 (1992) (emphasis in original) (internal citations omitted). Liability accrues only "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous, and difficult to satisfy." *Id.* at 670 (internal citations omitted).

Young's sparsely alleged Complaint fails to set forth sufficient facts to satisfy the pleading requirements for this tort. *See, e.g.*, *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008). The single alleged inappropriate incident of physical touching, as described using relatively unspecific detail, cannot be classified as "exceeding all bounds usually tolerated by decent society." *See* ECF 1 ¶ 21 (describing the conduct as "physically touching Plaintiff and trying to get in between Plaintiff's legs as Plaintiff was sitting on a stair step"). The Complaint does not even allege the type of physical touching Young endured. Additionally, she has provided almost no detail about Reaves's subsequent actions except those, such as staring and "watching her" and "standing close," that would clearly not support a claim for intentional infliction of emotional distress. *See, e.g.*, *Batson v. Shiflett*, 325 Md. 684, 602 A.2d 1191, 1216 (1992) (quoting *Harris*, 281 Md. 560 at 567) (noting that the heightened standard for intentional infliction claims "exists to screen out claims amounting to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' that simply must be endured as part of life."). To the extent that the "continued harassment" she alleges rose above that level, Young needs to include the specifics in her pleading. Count V will therefore be dismissed without prejudice as to both defendants.

### D. Negligent Hiring, Retention and Supervision (Count VI)

Because Young's state law claims against Reaves are subject to dismissal as pled, her claim for negligent hiring, retention, and supervision also fails. "[I]t is well established that Title VII violations do not qualify as tortious conduct for the purposes of claims of negligent hiring, training, retention, or supervision, because these claims must be based on common law injuries." *Russell v. Russel Motor Cars Inc.*, 28 F. Supp. 3d 414, 419-20 (D. Md. 2014) (quoting *Brown v. The Marjack Co., Inc.*, No. AW-08-168, 2010 WL 419389, at *6 (D. Md. Jan. 29, 2010)). Though she suggests, in her opposition, that the negligent hiring, retention and supervision claim against

HABC could flow from the tort of battery committed by Reaves, the word "battery" does not appear in Count VI of her Complaint, and she is not permitted to amend her pleading by way of her opposition.  *See Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (noting that a plaintiff "cannot, through the use of motion briefs, amend the complaint.").  Count VI will therefore also be dismissed without prejudice.

### E.  Local Government Tort Claims Act

Next, HABC argues that Plaintiff failed to provide appropriate notice of her state law claims pursuant to the Local Government Tort Claims Act ("LGTCA").  While the parties do not dispute that Young failed to provide formal notice, this Court agrees with Young that her EEOC charge, filed well within a one-year period from the date of injury, suffices to constitute actual notice of the claim.  The LGTCA states that its notice requirement "does not apply if, within 1 year after the injury, the defendant local government has actual or constructive notice of . . . the claimant's injury; or the defect or circumstances giving rise to the claimant's injury."  § 5-304(e).  While HABC unpersuasively argues that this exception "makes the rest of § 5-304 entirely meaningless," it is dictated by the statute's plain language.  Moreover, it merely emphasizes the need for the local government to have notice of the claim within a one-year period, while de-emphasizing the form of the notice.  In this case, actual notice was effected by Young's timely filed EEOC charge.  *See Nelson v. City of Crisfield*, No. CIV. L-10-1816, 2010 WL 4455923, at *2 (D. Md. Nov. 5, 2010) (determining that an EEOC charge constituted actual notice); *see also Morey v. Carroll Cty., Gov't*, No. CV ELH-17-2250, 2018 WL 2064782, at *22 (D. Md. May 3, 2018) (same).

### F. Punitive Damages

Finally, Defendants seek dismissal of Plaintiff's request for punitive damages as one potential remedy for her claims. Assessment of the types of damages that might be available if Plaintiff eventually prevails is not well-suited to the relevant question presented in a Rule 12(b)(6) motion—whether Plaintiff has adequately stated claims affording her some basis for relief. Because, as described above, Plaintiff has stated certain viable claims, this Court declines to address the propriety of punitive damages at this early stage of the litigation. Defendants will be free to re-raise the issue as the litigation proceeds.

### IV. CONCLUSION

For the reasons set forth above, HABC's Motion to Dismiss, ECF 18, will be granted as to Counts V-VI, as to Young's gender discrimination claim in Count I, and as to her claims pursuant to Article 46 in Counts III and IV, and denied as to her remaining claims. Reaves's Motion to Dismiss, ECF 17, will be granted. All claims are dismissed without prejudice. A separate Order follows.

Dated: August 27, 2021                                          /s/
                                                         Stephanie A. Gallagher
                                                         United States District Judge