IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NADINE L. YOUNG, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No.  ADC-21-00996 |
| | * | |
| HOUSING AUTHORITY OF BALTIMORE | * | |
| CITY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant Housing Authority of Baltimore City ("Defendant" or "HABC") moves this Court to grant summary judgment on the claims remaining in Plaintiff Nadine L. Young's Complaint. ECF Nos. 1, 50. After considering Defendant's Motion and the responses thereto (ECF Nos. 50, 55, 58), the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). Having reviewed the pleadings of record and all competent and admissible evidence submitted, Defendant's motion is GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was hired by HABC as a full-time Maintenance Worker in 2003. ECF No. 50-4 at 38. She was subsequently promoted to Maintenance Worker II and, in May 2018, was promoted to her current position, Maintenance Technician. *Id.*; ECF No. 50-5 at 15[2]. As a Maintenance Technician, Plaintiff is responsible for "turning over vacant units" by painting, replacing floor

---

[1] This case was referred to United States Magistrate Judge A. David Copperthite for all proceedings on October 7, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF Nos. 32, 36, 37.

[2] ECF No. 50-5 is a condensed copy of Plaintiff's deposition with four pages of deposition testimony printed to one page. Citations in this Opinion correspond to the deposition page number.

tiles, repairing and replacing light fixtures, stripping floors, and replacing bathroom fixtures before new tenants move in. ECF No. 50-4 at 38-39.

While assigned to the Duncanwood Landscape Crew in January 2008, Plaintiff reported to the Office of Fair Housing and Equal Opportunity ("FH&EO") that her co-worker "treated her as if she was his girlfriend" and that her supervisor "offered her money and trips for sexual favors." ECF No. 50-4 at 6. FH&EO investigated these allegations and concluded that there was no probable cause to believe that Plaintiff's co-worker or supervisor sexually harassed her. *Id.* at 9, 10, 13, 15. It did conclude, however, that HABC supervisory staff members *and* Plaintiff "willingly created and contributed to a hostile work environment[.]" *Id.* at 15. The investigation revealed that Plaintiff "consistently made vulgar comments of a sexual nature," "engaged in sexually provocative dancing in the presence of other employees," and "displayed nude pictures of herself and of men and women on her cellphone[.]" *Id.* at 17. Plaintiff's supervisors, the FH&EO report explains, knew or should have known about these inappropriate acts and "did nothing to stop" them. *Id.* at 15, 17. The FH&EO recommended, among other things, that Plaintiff's supervisors be reprimanded "for their inaction and contribution to the hostile work environment" and that Plaintiff be "counseled about her inappropriate behavior in the workplace." *Id.* at 18.

In August 2011, Plaintiff complained to the McCulloh Homes Housing Manager that a Maintenance Technician, Mr. George Reaves, had made sexually inappropriate and disparaging comments to her. *Id.* at 21; ECF No. 50-6 at 9.[3] Specifically, Plaintiff alleged that Mr. Reaves had made a crude comment about her nipples in the shop area. *Id.* Plaintiff also explained that Mr. Reaves "disrespected her" several months later at an employee appreciation cookout when he "told

---

[3] ECF No. 50-6 is a condensed copy of Mr. Reaves' deposition with four pages of deposition testimony printed to one page. Citations in this Opinion correspond to the deposition page number.

her to leave the food alone, not lift up the foil covering the food and to set up for the cookout." *Id.* at 22. After conducting another thorough investigation, the FH&EO concluded that Mr. Reaves' references to Plaintiff's nipples was inappropriate. *Id.* at 30. It also concluded that Plaintiff and Mr. Reaves "frequently had discussions regarding sexual matters" and that Plaintiff "consistently initiated and engaged in extremely inappropriate explicit sexual discussions." *Id.* The FH&EO recommended that disciplinary action be taken against both Plaintiff and Mr. Reaves *Id.* at 32. On January 9, 2012, Mr. Reaves received a letter of counseling explaining that he "made inappropriate and objectionable statements in the workplace." ECF No. 55-3 at 2. He was subsequently transferred to another location. ECF No. 50-6 at 19. For her role, Plaintiff was suspended for five days without pay. ECF No. 55-4. Plaintiff's union representative challenged this punishment as "extremely discriminating" as Plaintiff had made the complaint of harassment which triggered the investigation. ECF No. 58-1 at 6.[4] HABC and Plaintiff ultimately reached a settlement, under which Plaintiff's punishment was reduced to the forfeiture of two days of universal leave. ECF No. 55-6.

In August 2018, Plaintiff and three other HABC employees were transferred from Perkins Homes to Latrobe Homes. ECF No 1, ¶12; ECF No. 50-5 at 20, 45. On her first day working at Latrobe, Plaintiff spotted Mr. Reaves and deduced that he was assigned to the same development.

---

[4] In its reply, Defendant challenges the authenticity and relevance of several documents attached to Plaintiff's response. ECF No. 58 at 2, 4-5. Specifically, HABC argues that Ex. E, letter from Plaintiff's "former Union President," and Ex. L, Plaintiff's handwritten notes, are inadmissible as Plaintiff does not offer corresponding affidavits. *Id.* "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). Because Ex. E and Ex. L are not authenticated or otherwise available to the Court, I agree with Defendant that they are not admissible. However, while the contents of Ex. E are not authenticated, I note that the letter is referenced in the exhibit attached to Defendant's reply, ECF No. 58-1. Accordingly, I will consider that Plaintiff engaged her union to challenge her five-day suspension and that the parties ultimately reached a grievance settlement, ECF No. 55-6.

ECF No. 50-4 at 52. Later the same day, Plaintiff pulled aside her new superintendent, Mr. Carthell Maple, and expressed that she did not feel comfortable working with Mr. Reaves given their previous interactions. *Id.* at 57. She informed Mr. Maple that she "felt very uncomfortable getting out of [her] car, coming into the building, and seeing Mr. Reaves." *Id.* at 58. While acknowledging that he was unaware of any prior conflicts between Plaintiff and Mr. Reaves, Mr. Maple assured Plaintiff that, because they were assigned to different teams, she would not work directly with Mr. Reaves.[5] *Id.* at 57-58. In the following months, Plaintiff did see Mr. Reaves at work, and even worked on one project with him, but did not experience or report any inappropriate interactions. *Id.* at 59, 66-67.

Mr. Maple resigned as the superintendent of Latrobe Homes in June 2019 and was replaced on an interim basis by Mr. Harrold Harvey. *Id.* at 71. During Mr. Harvey's approximately two-month tenure as acting superintendent, Plaintiff did not have any inappropriate or uncomfortable interactions with Mr. Reaves, nor did she express to Mr. Harvey any past or present concerns about Mr. Reaves' workplace conduct. *Id.* at 71-72. Mr. Harvey was succeeded by Mr. Harold Brooks who, upon assuming the superintendent position, reassigned staff members to ensure that each vacant unit crew had three members. *Id.* at 73. As part of this reconfiguration, Mr. Reaves was assigned to work on the same vacant unit crew as Plaintiff. *Id.* Plaintiff did not, either immediately before or immediately after this announcement, inform Mr. Brooks that she had concerns about working with Mr. Reaves.[6] *Id.* at 74.

---

[5] Initially, Plaintiff was assigned to the vacant unit crew while Mr. Reaves handled maintenance tickets. ECF No. 50-5 at 58.
[6] Plaintiff explained that she did not immediately bring her concerns to Mr. Brooks because, at the time, Mr. Reaves "did not bother [her]." ECF No. 50-5 at 74.

4

Plaintiff and Mr. Reaves initially worked cooperatively together, with Plaintiff generally opting to work alone within the crew's assigned units. *Id.* Less than two months after being assigned to the same crew, however, Plaintiff alleges that Mr. Reaves resumed harassing her. *Id.* at 84. Specifically, Plaintiff recalls an occasion when Mr. Reaves came up to a bathroom where she was hanging a medicine cabinet and began staring at her. *Id.* Several seconds later, Mr. Reaves "bumped [Plaintiff's] back area" in an attempt to "help [her] adjust the medicine cabinet." *Id.* at 84-85, 93. Plaintiff expressed that she was able to hang the medicine cabinet herself and that she wanted Mr. Reaves to "get out," which he did. *Id.* at 84-85. Although this incident made Plaintiff "so uncomfortable," she did not immediately report it to any of her supervisors at HABC or to anyone in her union. *Id.* In the very next unit that the crew was assigned, Mr. Reaves was again watching Plaintiff as she was kneeling on the floor installing trim.[7] *Id.* at 86-87, 90-92. This attention not only made Plaintiff uncomfortable but was, according to Plaintiff, counterproductive, as Mr. Reaves could have been accomplishing other tasks within the unit. *Id.* at 86-87. While work was still ongoing in this unit, Plaintiff told Mr. Harvey, who was no longer the superintendent, that Mr. Reaves was "around [her] like that[.]" *Id.* at 94. Mr. Harvey informed her that he would "keep an eye on Mr. Reaves." *Id.* at 94-96.

Plaintiff was again harassed by Mr. Reaves on September 10, 2019, while the crew was stripping, buffing, and waxing the floors in a multilevel unit at 901 Valley Street. *Id.* at 96-97. After Mr. Reaves and another crew member buffed the floors, Plaintiff applied the first coat of wax and waited on the fourth or fifth step of the unit while it was drying. *Id.* at 97-98. While she was sitting on the step, Mr. Reaves opened the screen door and, against Plaintiff's wishes, entered

---

[7] According to Plaintiff, vacant unit teams are assigned to a unit for approximately one week at a time. ECF No. 50-5 at 95.

5

the unit. *Id.* at 98-99. Mr. Reaves stepped on the drying wax, approached Plaintiff, and "grabbed [her] legs and spread [her] legs open and tr[ied] to get between [her] legs." *Id.* at 99. Plaintiff immediately pushed him off and exited the unit. *Id.* In Plaintiff's view, Mr. Reaves opened her legs "to be sexual." *Id.* at 104. After leaving the unit, Plaintiff sat in her car for the rest of her shift to get "herself together." *Id.* at 105. As Mr. Reaves exited the work site, he "brush[ed] up past" Plaintiff's car and blew her a kiss. *Id.* at 106.

The next day, Plaintiff advised Mr. Harvey that she would no longer work with Mr. Reaves. *Id.* at 106-07. Mr. Harvey subsequently called a meeting where he informed Plaintiff and Mr. Reaves that they would no longer be working together. *Id.* at 108. Mr. Reaves became animated during this meeting and allegedly expressed that Plaintiff "shouldn't open her f****** mouth." ECF No. 1, ¶ 25; ECF No. 50-4 at 108. While the parties were moved to separate crews, neither was transferred to a different location. *Id.* at 108. Moving Mr. Reaves to a different crew did not, in Plaintiff's view, solve the problem because she still encountered Mr. Reaves at job functions, when she punched in and out, and in the lunchroom. *Id.* at 110-11. Plaintiff expressed these concerns to Mr. Harvey, who advised her to talk to Mr. Brooks. *Id.* at 114, 118-19.

While Plaintiff did not immediately inform Mr. Brooks of Mr. Reaves' conduct, she did, in October 2019, pull him aside at the beginning of a mandatory sexual harassment training hosted by HABC. *Id.* at 121-22. She explained that Mr. Reaves had harassed her and that, in her view, Mr. Harvey should have passed along the concerns that she had expressed to him. *Id.* at 122. Later that afternoon, Mr. Brooks emailed HABC's Chief Human Resources Officer, Ms. Kimberly Graham, informing her of Plaintiff's allegations of sexual harassment. ECF No. 50-4 at 47. In the email, he explained that Plaintiff and Mr. Reaves would be separated until the matter was properly investigated. *Id.*

6

On October 17, 2019, Plaintiff and her union representative attended a meeting with Ms. Lakisha Brown, a member of HABC's Human Resources Department. ECF No. 50-5 at 123-25. HABC subsequently engaged the law firm Semmes, Bowen, & Semmes to investigate Plaintiff's allegations of workplace harassment. ECF No. 50-4 at 37. The firm's report, dated November 15, 2019, explains that Mr. Reaves violated HABC's Code of Conduct and Civility Policy when he attempted "to sit in between [Plaintiff's] legs and [blew] her a kiss[.]" *Id.* at 45. It recommended, among other things: (1) that disciplinary action be taken against Mr. Reaves; (2) that Mr. Reaves be transferred to another property; (3) that Mr. Reaves and Plaintiff never work together; and (4) that both parties notify their supervisors that they are not to work with one another. *Id.* HABC accepted these recommendations and Mr. Reaves was subsequently issued a letter of counseling and transferred to another location. ECF No. 50-4 at 60, 66, 67.

Plaintiff alleges that Ms. Brown subsequently retaliated against her for making her 2019 harassment complaints by denying her overtime shifts. ECF No. 50-5 at 146. She points to a November 2019 overtime shift offered at Douglas Homes, the development where Mr. Reaves was reassigned.[8] *Id.* at 142-44; ECF No. 1, ¶¶ 34, 39. While Plaintiff was assigned to this shift, she was called back to Latrobe almost immediately as Ms. Brown informed her that she was not permitted to do overtime at Mr. Reaves' development. ECF No. 50-4 at 144, 146; ECF No. 1, ¶¶ 36, 39. In Plaintiff's view, this decision was clearly retaliatory, as Mr. Reaves was not scheduled to be on the premises during the overtime shift. ECF No. 50-4 at 144, 146; ECF No. 1, ¶¶ 36-37.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in December 2019 and received a right to sue letter in January 2021. ECF No. 1, ¶ 40;

---

[8] This Court will adopt the Complaint's reference to "Douglas Homes," although this Court knows that HABC maintains a location on E. Lexington Street known as "Douglass Homes."

ECF No. 3. She filed a Complaint in this Court against the Mayor and City Counsel of Baltimore City, Mr. Reaves, and HABC on April 22, 2021. ECF No. 1. The Mayor and City Counsel of Baltimore City were voluntarily dismissed on June 8, 2021. ECF Nos. 13, 14. On August 27, 2021, this Court granted Mr. Reaves' motion to dismiss, leaving HABC as the sole remaining Defendant. ECF Nos. 17, 26. On the same day, HABC's Motion to Dismiss was granted in part and denied in part. ECF Nos. 18, 26. This Court dismissed Plaintiff's gender discrimination claims but held that her hostile work environment and retaliation claims were sufficiently pled. ECF No. 26 at 9-10. This Court also dismissed Plaintiff's intentional infliction of emotional distress and negligent hiring, retention, and supervision claims. *Id.* at 13-16. Defendant filed the present motion on June 27, 2022. ECF No. 50. Plaintiff responded in opposition on August 24, 2022, and Defendants replied on September 22, 2022. ECF Nos. 55, 58.

**DISCUSSION**

**A.    Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging*

8

*Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party, and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322-24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**B.   Defendant's Motion**

1.   Title VII Hostile Work Environment Claim

HABC argues that summary judgment on Count I, alleging hostile work environment in violation of Title VII, is appropriate because Plaintiff's allegations of workplace harassment are not "severe or pervasive" nor is Mr. Reaves' conduct imputable to HABC. ECF No. 50-2 at 18-20, 23-25. Plaintiff responds by arguing that Mr. Reaves' "verbal sexual harassment" and two instances of "unwanted physical contact" rise to the level of severe and pervasive. ECF No. 55 at 14-16. This hostile work environment continued, Plaintiff explains, even after she reported Mr. Reaves conduct in 2019. *Id.* at 16-17. Plaintiff also asserts that Mr. Reaves' actions are imputable to HABC as her 2011 complaint put HABC on notice of Mr. Reaves' harassment and, despite this knowledge, HABC placed them at the same location and on the same crew. *Id.* at 18-21.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008) (quoting *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001)). "To establish a prima facie case for hostile work environment sexual harassment under Title VII, the plaintiff must prove the relevant conduct was: (1) unwelcome; (2) based on the plaintiff's sex; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) imputable to the employer." *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022).

The Court agrees with Plaintiff that Mr. Reaves' harassing conduct was sufficiently "severe" to create an abusive working environment for Plaintiff.[9] In order to satisfy the "severe or pervasive" element, Plaintiffs must prove that they "subjectively perceive[d] the environment to be abusive" *and* "that a reasonable person would find [the environment] hostile or abusive[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). "[T]he behavior need not be *both* severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 413 (D.Md. 2015) (quoting *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 669 (D.Md 2008)). Because the severe or pervasive inquiry "is 'quintessentially a question of fact,'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 333

---

[9] Defendant does not argue that Plaintiff failed to carry her burden on the first two elements of a hostile work environment claim. Accordingly, my analysis is limited to whether Mr. Reaves' conduct was sufficiently severe or pervasive to create an abusive working environment and whether his conduct is imputable to HABC.

(4th Cir. 2011) (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989)), it "is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22-23. The Supreme Court of the United States has explained that "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance" are relevant considerations in the "severe or pervasive" inquiry. *Id.* at 23.

While this Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test," *Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008), "[w]hen the alleged discrimination includes physical touching the courts have been more reluctant to grant summary judgment." *Williams*, 86 F.Supp.3d at 414; *see also Okoli v. City of Balt.*, 648 F.3d 216, 221 (4th Cir. 2022) (reversing a district court's grant of summary judgment after holding that an employer's "repeated propositioning and physical touching" was sufficiently severe and pervasive). In *Williams v. Silver Spring Volunteer Fire Department*, Plaintiff alleged that her supervisor, among other things, inappropriately touched her and, "in the presence of numerous colleagues, walked over to where [she] was seated and began to straddle her waist and grind his pelvis on her." 86 F.Supp.3d at 405. The Court reasoned that "a reasonable juror could [] find [the supervisor's] conduct to be so severe as to create a hostile work environment" as "whatever is lacking in the pervasiveness of [the supervisor's] actions is made up for by the severity of those acts." *Id.* at 413. The "physical nature" of the contact, the Court explained, made it particularly severe as "inappropriate physical touching is a strong indicator of a hostile work environment[.]" *Id.* (citation omitted).

Here, Plaintiff subjectively perceived the work environment at HABC to be hostile and abusive as she reported Mr. Reaves' behavior to three supervisors and, while talking to Mr. Brooks,

"broke down into tears explaining . . . that she was a victim of sexual assault from one of her coworkers[.]" ECF No. 50-5 at 56-57, 107, 121-22; ECF No. 50-4 at 47. In addition, because Mr. Reaves physically touched Plaintiff in a sexual manner, a reasonable juror could conclude that his conduct was sufficiently "severe." Of the four incidents that Plaintiff alleges, three involve relatively benign conduct such as staring, incidental contact while working, and a sexually suggestive comment. ECF No. 50-4 at 30; ECF No. 50-5 at 83-84; 86. The remaining incident, however, involves a serious allegation of unwanted physical touching in the workplace. In her deposition, Plaintiff testified that Mr. Reaves "grabbed [her] legs and spread [her] legs open [to] try to get between [her] legs" while she was sitting on a staircase at Latrobe Homes. ECF No. 50-5 at 99. Minutes later, Mr. Reaves further solidified the sexual nature of this behavior when he blew Plaintiff a kiss as he exited the worksite. *Id.* at 106. Because Mr. Reaves, like the supervisor in *Williams*, engaged in an unwanted and sexually suggestive physical touching, "a reasonable juror could conclude that whatever is lacking in the perverseness of [Mr. Reaves'] actions is made up by the severity" of the act. *Williams*, 86 F.Supp.3d at 413; *accord Faragher v. City of Boca Raton*, 524 U.S. 775, 788-79 (1998). Accordingly, I find that Plaintiff has established a genuine dispute of material fact as to whether Mr. Reaves' conduct was sufficiently severe or pervasive.

The Court next turns to whether Mr. Reaves' conduct was imputable to HABC. Workplace harassment by a co-worker is imputable to an employer only if "the employer . . . was negligent in controlling working conditions."[10] *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The

---

[10] If, however, the harassing employee was Plaintiff's supervisor, "different rules apply." *Vance*, 570 U.S. at 424. The Supreme Court of the United States has explained that:

> If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing

12

Supreme Court of the United States has reasoned that "[e]vidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed" are relevant considerations in this negligence inquiry. *Id.* at 449; *see also Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 255 (4th Cir. 2015) (holding that harassing conduct is imputable when the employer "knew or should have known about the harassment and failed to take effective steps to stop it") (quoting *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006)). And, the United States Court of Appeals for the Fourth Circuit has explained that "the distribution of an anti-harassment policy provides 'compelling proof' that the company exercised reasonable care in preventing and correcting harassment." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 335 (4th Cir. 2011) (quoting *Barrett v. Applied Radiant Energy*, 240 F.3d 262, 266 (4th Cir. 2001)). If an employer has implemented and distributed an anti-harassment policy, "a plaintiff must show by a preponderance of the evidence that the policy was either adopted or administered in bad faith or that it was otherwise defective of dysfunctional." *Id.*

In the instant case, I agree with Defendant that HABC was not negligent in placing Plaintiff and Mr. Reaves at the same worksite and that Plaintiff's 2011 complaint was insufficient to put HABC on notice of Mr. Reaves' 2019 harassment. Although the FH&EO's detailed 2011 position statement made several remedial recommendations, it did not recommend that Plaintiff and Mr. Reaves be permanently separated. ECF No. 50-4 at 32-33. Indeed, it found that the parties "were

---

behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Id.* A supervisor in this context is limited to those who have been "empowered by the employer to take tangible employment actions against the victim[.]" *Id.* at 431. Because Mr. Reaves was unquestionably Plaintiff's co-worker, and not her supervisor, I decline to address Defendant's argument that it is entitled to this affirmative defense. ECF No. 50-2 at 26-29.

friends." *Id.* at 30. Despite the lack of a written instruction compelling separation, Mr. Maple took

it upon himself to ensure that the parties were not working together after Plaintiff informed him of

her 2011 harassment complaint. ECF No, 50-5 at 57-59. However, after Mr. Brooks took over as

superintendent Plaintiff did not inform him that she was uncomfortable working with Mr. Reaves,

nor did she immediately inform him that Mr. Reaves was harassing her in the workplace. *Id.* at 73,

84-85, 95. As such, HABC did not know or have reason to know Plaintiff was uncomfortable

working with Mr. Reaves or that Mr. Reaves had resumed his workplace harassment. *See Boyer-*

*Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc) ("[T]he victim of a

co-worker's harassment is prudent to alert her employer to ensure that, if the harassment continues,

she can establish the negligence necessary to impute liability."). Without this knowledge, a

reasonable juror could not conclude that HABC was negligent in assigning both parties to the same

development or to the same crew. Far from demonstrating negligence, Plaintiff's supervisors

promptly took remedial action after learning of Mr. Reaves 2019 harassment by transferring him

to another crew and, eventually, bringing Plaintiff's allegations to human resources. ECF No. 50-

4 at 47; ECF No. 50-5 at 108-09, 122-23; ECF No. 50-8 at 71.

   HABC's detailed sexual harassment policies and thorough investigations also prohibit a

reasonable juror from concluding that HABC was negligent in controlling Plaintiff's workplace

conditions. Throughout Plaintiff's employment, HABC enforced a "Manual of Personnel Policies

and Procedures" to, among other things, "establish a work environment free from sexual

harassment." ECF No. 50-4 at 49. The detailed anti-sexual harassment section provides that

"[e]mployees must report any instances of sexual harassment to the Office of Human Resources

or to the Internal Audit and Investigations Unit" and that violations of this policy "may result in

disciplinary action up to and including termination."[11] *Id.* at 50. In her deposition, Plaintiff explained that she had attended sexual harassment trainings hosted by HABC in which she was given "a brochure of the information" and was advised that she could report a sexual harassment claim to Human Resources. *See* ECF No. 50-5 at 31, 33-34. In accordance with this policy, Plaintiff has, prior to the initiation of this lawsuit, reported three incidents of sexual harassment to HABC's Human Resources Department. Immediately following each complaint, HABC initiated thorough investigations which culminated in detailed position statements. ECF No. 50-4 at 5-18; 20-33; 37-46. Through these investigations, HABC was able to corroborate many of Plaintiff's allegations and subsequently impose corresponding disciplinary action against those who violated the policies.[12] *See* ECF No. 50-4 at 18, 30, 32-33, 35, 45-46, 62-63. A reasonable juror could not, therefore, conclude that HABC adopted or administered its anti-sexual harassment policy in bad faith. *Hoyle*, 650 F.3d at 335. Accordingly, I find that HABC is entitled to summary judgment on Count I.

2.    Title VII Retaliation Claim

Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation as she did not suffer an adverse employment action as a result of her 2019 harassment complaint against Mr. Reaves. ECF No. 50-2 at 29-31. Plaintiff's claim also fails, according to Defendant, because she has not "connect[ed] her protected activity to her unidentified harm." *Id.* at 31. Plaintiff responds by arguing that she engaged in a protected activity in October 2019 when she reported Mr. Reaves' harassment and that HABC began taking adverse employment actions less than fifty days later

_____

[11] HABC has also enforced a "Civility Policy" to "promote mutual respect, civility and orderly conduct among employees and customers." ECF No. 50-4 at 51.
[12] Importantly, both the 2011 and 2019 investigations found that Mr. Reaves had violated HABC's sexual harassment policy and recommended that he be disciplined for his conduct. ECF No. 50-4 at 30-33, 45-46.

when it denied her overtime opportunities and promotions.[13] ECF No. 55 at 21-22. These denials, Plaintiff asserts, were "casually linked to a protected activity."[14] *Id.* at 22.

A Title VII retaliation claim can be proven "through direct evidence of retaliatory animus or via the application of the of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Inds. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Under the *McDonnell Douglas* framework, a Plaintiff must first establish a *prima facie* case of retaliation by proving "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). After this showing is made, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122. If the employer makes this showing, the burden shifts back to the plaintiff to "rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

---

[13] Plaintiff argues that following her 2011 report of harassment, "she received no pay raises or promotions until she was later promoted to the role of Maintenance Technician in 2018." ECF No. 55 at 4. Defendant is correct, however, that this allegation cannot be used to support her retaliation claim as it predated her 2019 engagement in protected activity. ECF No. 58 at 4-5. *See Gibson v. Marjack Co., Inc.*, 718 F.Supp.2d 649, 655 (D.Md. 2010) ("To establish a causal connection between a protected activity and an adverse action, a Plaintiff must prove that the protected activity preceded the adverse action[.]").

[14] In her response, Plaintiff alleges that "HABC also retaliated against [her] for filing her 2011 EEO claim when it issued a five-day suspension against her as a result of the findings from the related investigation." ECF No. 55 at 22. However, this 2011 incident is not properly before this Court, as it falls well outside of Title VII's 180-day window to file a retaliation charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unemployment practice occurred[.]"). Plaintiff did, indeed, file suit in this Court in 2011 against HABC alleging, among other things, that it retaliated against her by issuing a five-day suspension. *See* Case No. 14-cv-1764-WDQ. This claim was, however, ultimately dismissed as Plaintiff failed to exhaust her administrative remedies. *Id.* at ECF No. 18.

Here, because Plaintiff relies on the *McDonnell Douglas* framework to prove her claim, the Court begins by examining whether Plaintiff has made a *prima facia* showing of retaliation. The parties principally disagree on whether Plaintiff has made the requisite showing on the second prong, which requires that Plaintiff show that HABC took an "adverse employment action" against her.[15] "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Roberts*, 998 F.3d at 122-23 (quoting *Chang Lim v. Azar*, 310 F.Supp.3d 588, 601 (D.Md. 2018)). The United States Supreme Court has explained that for an employment action to be "adverse," "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

In *Ray v. International Paper Co.*, the United States Court of Appeals for the Fourth Circuit reasoned that the denial of voluntary overtime hours *may* constitute an adverse employment action because it reduces take home pay. 909 F.3d 661, 670 (4th Cir. 2018). There, plaintiff was informed that she was not permitted to "perform 'voluntary' overtime work" "[a]round the same time" that she filed a sexual harassment complaint against her supervisor. *Id.* at 665. While noting that it "need not decide whether *every* reduction in an employee's overtime hours can qualify as an adverse employment action," the Court reasoned that this denial was sufficiently adverse as it

---

[15] Defendant does not dispute that Plaintiff's complaints to her supervisors and to human resources qualify as "protected activity." Recently, the United States Court of Appeals for the Fourth Circuit explained that "[c]omplaints raised through internal company procedures are recognized as protected activity." *Roberts v. Glen Inds. Grp.*, 998 F.3d 111, 122 (4th Cir. 2021). Accordingly, I find that Plaintiff has created a genuine dispute of material fact as to whether she engaged in a protected activity when she reported Mr. Reaves' 2019 harassment to Mr. Brooks and Human Resources.

resulted in plaintiff losing a "significant part of [her] earnings." *Id.* at 670 (emphasis added; alteration in original). *See also Witherspoon v. Brennan*, 449 F.Supp.3d 491, 504 (D.Md. 2020) ("Defendants legal contention that [plaintiff] may not maintain a Title VII claim based on lost discretionary hours is flatly contradicted by precedent.").

Unlike in *Ray*, here, there is no evidence of retaliatory animus in HABC's decision to limit the locations where Plaintiff could work overtime shifts. Mr. Reaves testified at his deposition that, immediately after seeing Plaintiff clock in at his new development, he informed his supervisor that he and Plaintiff were not permitted to work together on the same site. ECF No., 55-14 at 7-8. Human Resources, in accordance with the 2019 position statement, subsequently called Plaintiff back to her development to avoid any further harassment and because the parties were instructed that they were "never to work together again." ECF No. 50-4 at 62. Under this arrangement, and in further contrast to *Ray*, Plaintiff was prohibited only from working overtime shifts at Mr. Reaves' assigned development. 909 F.3d at 665; ECF No. 50-5 at 159-61. Because HABC offers overtime opportunities at other locations, Plaintiff has not shown that this accommodation constituted an "adverse employment action" as she had the opportunity to mitigate any "direct economic harm" by working overtime shifts at other developments. *Ray*, 909 F.3d at 667, 670 (citations omitted); ECF No. 50-5 at 157-59. In fact, Plaintiff's timecard shows that she worked three hours of overtime just five days after she was pulled off the Douglas Homes shift.[16] ECF No. 50-4 at 69. And, Plaintiff testified during her deposition that she has worked at least three overtime shifts since 2019—two shifts at Latrobe Homes and one shift at Cherry Hill Homes. ECF No. 50-5 at 159-163. She was even assigned some of these shifts during the COVID-19 pandemic, when

---

[16] HABC also compensated Plaintiff for 1.75 hours of overtime work for her shift at Douglas Homes despite her being there for only a short period of time. ECF No. 50-4 at 69; ECF No. 50-5 at 147.

"due to COVID restrictions, there was not much work being done in the units." ECF No. 50-4 at 2.

Given Plaintiff's serious accusations of harassment, this narrowly tailored accommodation, which guarantees that the parties remain separated while on the job, would not "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (citation omitted). Plaintiff could, and apparently did, make up for any income lost to this accommodation by working overtime at other HABC developments. ECF No. 50-5 at 159-161. Accordingly, a reasonable juror could not conclude that Plaintiff suffered an "adverse employment action," and I grant summary judgment in favor of HABC on Count II.

3.    The State Law Claims

Plaintiff also asserts in Counts III and IV of her Complaint that HABC violated Article 24 of the Maryland Declaration of Rights by cultivating a hostile work environment and retaliating against her.[17] ECF No. 1 at ¶¶ 65-82. Defendant argues that these claims fail for the same reasons as Plaintiff's corresponding Title VII claims. ECF No. 50-2 at 33. Article 24 of the Maryland Declaration of Rights commands that: "[N]o man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." This provision has been construed as "the state law equivalent of the Fourteenth Amendment of the United States." *Hawkins v. Leggett*, 955 F.Supp.2d 474, 496 (D.Md. 2013) (citation omitted). "Therefore, the analysis under Article 24 is, for all intents and purposes, duplicative of

---

[17] In ruling on HABC's motion to dismiss, this Court explained that while some of Plaintiff's "Article 24 claims survive dismissal, the other provision of the Declaration of Rights that [Plaintiff] cites, Article 46, is inapplicable in this context." ECF No. 26 at 12. Accordingly, my analysis of Plaintiff's Declaration of Rights claims is limited to Article 24.

the analysis under the Fourteenth Amendment." *Id.*

The Equal Protections Clause of the Fourteenth Amendment does not, itself, provide a private cause of action. However, 42 U.S.C. § 1983 "'provides a cause of action for all citizens injured by an abridgement' of the Equal Protections Clause." *Verderamo v. Mayor and City Council of Balt.*, 4 F.Supp.3d 722, 733 (D.Md. 2014) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119-20 (1992)). When evaluating employment discrimination claims under § 1983, Courts apply the same standards developed under Title VII. *See Riley v. Buckner*, 1 Fed.App'x 130, 133 (4th Cir. 2001) ("Our precedent applies the standards developed for hostile work environment claims under Title VII for sexual harassment under section 1983."); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) ("Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983."); *accord Brown v. Bratton*, ELH-19-1450, 2020 WL 886142, at * 30 (D.Md. Feb. 21, 2020) ("In the employment discrimination context, courts apply the standards developed under Title VII to an equal protection claim asserted under § 1983."); *Louis v. City of Rockville*, PX-16-1471, 2018 WL 1471681, at *8 (D.Md. Mar. 23, 2018) ("Equal Protection discrimination claims brought pursuant to § 1983 proceed under the same framework applicable to Title VII claims.").

Here, like her Title VII claims, Plaintiff's Article 24 claims fail because she is not able to make out a *prima facie* case of hostile work environment or retaliation. *See Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) ("Establishment of the prima facie case is not a requirement that can be overlooked by the courts or sidestepped by aggrieved employees under either Title VII or sections 1981 and 1983."). As articulated above, Plaintiff has not provided evidence that would allow a reasonable juror to find that HABC negligently maintained her working conditions and has, therefore, failed to make out a hostile work environment claim.

Accordingly, I grant summary judgment on Count III. Additionally, Plaintiff has failed, under the burden-shifting framework of *McDonnell Douglas*, to make out a *prima facie* case of retaliation as she has not produced evidence that would allow a reasonable juror to conclude that she has suffered an "adverse employment action." Therefore, I also grant summary judgment in favor of Defendant on Count IV.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 50) is GRANTED. A separate Order will follow.

Date: ___27 September 2022___

_____
A. David Copperthite
United States Magistrate Judge